J2LOTTINGER, Chief Judge.
This case arises out of a dispute over the liability of the State of Louisiana, through the Department of Transportation and Development (DOTD), on a judgment rendered in favor of plaintiff, Carol Lewis. Lewis is *641 the curatrix of her son, Jim H. Shiflett, Jr., who was interdicted following severe brain stem injuries which he received in an automobile accident.
Lewis brought suit to recover damages for Shiflett’s injuries against the DOTD and Barber Brothers Contracting Company, Inc. On April 6, 1994, the trial court rendered judgment in favor of Lewis and against DOTD, in the principal amount of $3,126,604.34, together with legal interest thereon “from the date of judicial demand, October 11, 1988, until paid at the full conventional rate as set forth pursuant to La. C.C. art. 2924.” Lewis v. Barber Brothers Contracting Company, Inc., 335,980 (19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana). . DOTD appealed, and on June 23, 1995, this Court affirmed the judgment of the trial court. Lewis v. Barber Brothers Contracting Company, Inc., 94-1684 (La.App. 1 Cir. 6/23/95), 658 So.2d 841(Unpublished opinion). DOTD applied for rehearing and its application was denied on August 24, 1995. DOTD then applied for a writ of certiorari from the Louisiana Supreme Court; that application was denied on December 8,1995.
After the denial of writs, the State of Louisiana refused to pay the final judgment contending that the amendment to La. Const. Art. XII, § 10(C) and the statutory companions to that amendment, which became effective on November 23, 1995, required the application of a cap of $500,000.00 on the general damage award and a cap of six percent on prejudgment legal interest. In view of this contention, the State of Louisiana agreed to pay only $1,809,664.14 to Lewis, the amount it contended was due after the application of the aforementioned caps. Lewis accepted this payment, with reservation of her right to contest the application of these caps to the judgment.
Lewis then filed this suit for declaratory judgment seeking a judicial declaration that she is entitled to payment in accordance with the terms of the judgment, subject to credit for the sum previously paid by the State. After the suit was answered, plaintiff moved for summary judgment. The trial court granted summary judgment, and rendered judgment as prayed for by Lewis. The State has suspensively appealed.
|sThe issue raised on appeal calls for us to consider the impact of the amendment to Article XII, § 10(C) of the Louisiana Constitution and the provisions of Acts 1995, No. 828 on cases, such as this, which were pending between the time that La. R.S. 13:5106 and 5112 were declared unconstitutional and the effective date of the amendment and Act 828. La. Const. Art. XII, § 10(A) provides a general prohibition against sovereign immunity:
Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
In 1985, the legislature added subsection B to La. R.S. 13:5106, which placed a cap of $500,000.00 on general damages awarded in suits against the state, a state agency or political subdivision. This cap was declared unconstitutional by the Louisiana Supreme Court in Chamberlain v. State, Department of Transportation and Development, 624 So.2d 874 (La.1993). The court found that the statute’s ceiling on general damages partially resurrected sovereign immunity, in direct conflict with the constitution.
In 1985, the legislature also added subsection C to La. R.S. 13:5112, which limited prejudgment legal interest on judgments against the state, state agencies or political subdivisions to six percent. Relying on Chamberlain, the Louisiana Supreme Court, in Rick v. State, Department of Transportation and Development, 93-1776, 93-1784 (La.1/14/94), 630 So.2d 1271, declared that this limitation on interest was also unconstitutional as it too violated the constitution’s prohibition against sovereign immunity.
In the 1995 legislative session, the legislature passed Act No. 1328, which was a joint resolution to submit to the electorate an amendment to Article XII, § 10(C) of the Louisiana Constitution. The amendment authorized the legislature to limit and otherwise provide for the extent of liability that could be imposed on the state; state agencies and political subdivisions. The resolution *642 contained in Act No. 1328 provides in pertinent part:
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages .... The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as ivell as future claims. (Emphasis added).
|4The amendment passed and became effective on November 23, 1995. Also during the 1995 legislative session, the legislature enacted Act No. 828 which would become effective if and when the constitutional amendment passed. The act amended La. R.S. 13:5106 to provide for a $750,000.00 cap on general damages and reenacted La. R.S. 13:5112 to provide for prejudgment legal interest at six percent. Act 828 provides in pertinent part:
Section 2. R.S. 13:5106 is hereby amended and reenacted and R.S. 13:5112 ... [is] hereby reenacted to read as follows:
§ 5106. Limitations
[[Image here]]
B. (1) In any suit for personal injury, the total amount recoverable, exclusive of medical care and related benefits and loss of earnings, and loss of future earnings, as provided in this Section, shall not exceed the limit of liability in effect at the time of judicial demand. On the effective date of this Subsection, the limit of liability shall be seven hundred fifty thousand dollars .... (Emphasis added).
[[Image here]]
§ 5112. Suits against the state or political subdivision; court costs; interest
[[Image here]]
C. Legal interest on any claim for personal injury or wrongful death shall accrue at six percent per annum from the date service is requested following judicial demand until the judgment thereon is signed by the trial judge in accordance with Code of Civil Procedure Article 1911. Legal interest accruing subsequent to the signing of the judgment shall be at the rate fixed by Civil Code Article 2924. (Footnote omitted).
In light of this history, we must determine what effect the amendment and act have on cases which were still pending between the time that Chamberlain and Rick declared La. R.S. 13:5106 and 5112 unconstitutional and the time that the amendment and Act 828 became effective.
In Plebst v. Barnwell Drilling Company, 243 La. 874, 148 So.2d 584 (1963) and Long v. Insurance Company of North America, 595 So.2d 636 (La.1992), the Louisiana Supreme Court dealt with the issue of the effect of a constitutional amendment which attempts to make valid a law which was previously determined to be unconstitutional.
15In Plebst the court noted that:
Generally, the law seems to be well established that an unconstitutional statute'is not validated by a subsequent constitutional amendment which does not ratify and confirm the statute but merely authorizes the enactment of such a statute.
On the other hand, it is equally well settled that statutes, in conflict with the constitution at the time they are passed, are validated by a constitutional amendment which expressly ratifies and confirms them and they may be given retrospective effect “ * * ⅜ provided such validation does not impair the obligations of a contract or divest vested rights.”
Plebst, 148 So.2d at 588. (Citations omitted).
The constitutional amendment at issue in Plebst specifically ratified and validated the statute which had been declared uneonstitu-.tional. Id. Before determining whether the amendment could retroactively validate the law at issue, the court addressed plaintiffs’ contention that retroactive application would divest them of vested rights as property owners. Id.
The constitutional amendment at issue in Long did not specifically ratify or validate the unconstitutional statute. There, the *643 court looked to the intent of the legislature to determine whether the amendment retroactively validated the prior unconstitutional statute. Long, 595 So.2d at 639. After closely examining the language of the amendment and the act at issue, the court conclud-éd that the legislature intended the amendment to give retroactive validation to the prior unconstitutional law. Id. Additionally, the court found that retroactive application of the prior law did “not result in an impairment of contractual obligations or a loss of vested rights.” Id. at 640.
In the instant case, the constitutional amendment does not expressly ratify the pri- or law. Instead, it gives the legislature the discretion to apply the cap and interest rate “to existing as well as to future claims.” La. Const. Art. XII, § 10(C). In the absence of express ratification, we apply the principles of Long, and look to the intent of the legislature to determine whether the amendment retroactively validated the statutes which were declared unconstitutional by Chamberlain and Rick.
In the recent decision of Farley v. State of Louisiana, Department of Transportation and Development, 96-0538 (La.App. 1 Cir. 9/27/96), 680 So.2d 750, we | (¡determined the legislature’s intent regarding the application of La. R.S. 13:5106. After reviewing the language of the amendment and Act 828, we reasoned that:
This new provision [Act 828] specifies the effective date for the imposition of the cap to be the date of judicial demand. Here, there is no limitation on the state’s liability because the cap contained in La. R.S. 13:5106B(1) was declared unconstitutional by the supreme court in Chamberlain. Under our decision in Magee, the holding of Chamberlain applies to those cases which were still pending when that case was rendered (September 3, 1993). The date of judicial demand in this case is May 7, 1993. On the date Chamberlain was rendered, this case had not yet gone to trial. Thus, under Magee, on the date of judicial demand, there was an impediment to enforcing the cap contained in former La. R.S. 13:5106, namely, the holding of unconstitutionality in Chamberlain. In other words, at the time of judicial demand, there was an invalid statute, so there was no limitation of the state’s liability. (Footnote omitted).
Farley, 96-0538 at 4-5, 680 So.2d at 753.
In the present case, the date of judicial demand was October 11, 1988. Writs were not denied by the supreme court until December 8, 1995, thus, this case was still pending on the date Chamberlain was rendered. Here, as in Farley, there was no limitation on the state’s liability on the date of judicial demand because there was an impediment to enforcing the cap contained in former La. R.S. 13:5106. Thus, the cap contained in La. R.S. 13:5106 does not apply.
In Farley we did not discuss the application of La. R.S. 13:5112. However, we are again guided by the supreme court’s decision in Long, and look to the intent of the legislature to determine whether the amendment retroactively validated the six percent prejudgment interest rate contained in La. R.S. 13:5112. Upon reviewing the language of the amendment and Act 828, we find nothing to indicate that the legislature intended to give La. R.S. 13:5112 retroactive effect. Compare Long, 595 So.2d 636 (La.1992) (language of the amendment and act demonstrated the legislature’s intent that the statute be given retroactive effect). Because the amendment did not expressly ratify former La. R.S. 13:5112 and because there is no evidence tending to show that the legislature intended to give retroactive application to the new statute, we must conclude that the six percent prejudgment interest rate contained in La. R.S. 13:5112 does not apply.
17Accordingly, we hold that the cap on general damages contained in La. R.S. 13:5106 and the cap on legal interest contained in La. R.S. 13:5112 do not apply to cases, such as this, which were still pending between the time that these statutes were declared unconstitutional by Chamberlain and Rick and the effective date of the amendment to La. Const. Art. XII, § 10(C) and Acts 1995, No. 828.
*644 CONCLUSION
For the forgoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of Lewis. Costs of this appeal are assessed against the State in the amount of $417.64.
AFFIRMED.
FOIL, J., concurs in the result.